## Rice, Administrator of William Dills v. Meade, et al.

(Decided May 19, 1925.)

### Appeal from Johnson Circuit Court.

1. Appeal and Error—Appeal Dismissed when Amount Involved is Below Jurisdictional Amount.—Separate independent claims against a decedent's estate cannot be added together to give the Court of Appeals jurisdiction, and appeal from allowance of claim of $60.00, will be dismissed.

2. Gaming—Parties to Speculative Contracts Cannot have Relief Because Speculation Proves Unfortunate.—Parties who enter into speculative contracts cannot have relief because speculation proves to be unfortunate.

3. Mines and Minerals—Maker of Note Given for Interest in Oil and Gas Lease Cannot be Relieved from Liability Because Lease was of no Value.—Maker of note given for interest in oil and gas lease will not be relieved from liability on note because lease was of no real value, where there was no fraud, and neither party knew whether land contained oil or gas.

4. Work and Labor—Contract to Recover Board is Necessary and Must be Proved.—Under Kentucky Statutes, section 2178, providing that persons except tavern keepers or keepers of houses of private entertainment, who shall furnish board without an agreement as to compensation, will be considered as doing the same of courtesy, a contract is necessary and must be proved when denied in order to recover board, unless person furnishing board is within statutory exceptions.

5. Executors and Administrators—Evidence Held Insufficient to Show Contract to Pay Board and that Property was Transferred for its Payment.—Evidence held insufficient to show contract by decedent to pay board to brother-in-law, or to show that certain property had been transferred for its payment.

W. H. VAUGHAN & SON for appellant.

FRED HOWES and BLAIR & HARRINGTON for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Appeal as to Martha Dean dismissed; as to Meade &
Riley affirmed, and as to Preston reversed.

William Dills, a resident of Johnson county, was
killed in the summer of 1922; I. G. Rice qualified as his
administrator and took charge of all the personal estate
he could find except two mules, a wagon and harness ap-
praised at $125.00, which Harry Preston had in pos-
session and refused to surrender to the administra-
tor. Finding the personal estate insufficient to pay
the debts the administrator brought this suit against the
heirs and creditors for the settlement of the estate and a
sale of the land so far as necessary. He made Harry
Preston a defendant to the action and prayed judgment
against him for the mules, wagon and harness. Preston
filed an answer and counterclaim in which he set up that
on September 22, 1921, the deceased entered into a con-
tract with him for board; that they agreed upon a price
of a dollar a day and that he had boarded him under this
contract for 239 days, making $239.00; that no part of
the amount had been paid except the deceased made a
settlement with him on June 8, 1922, and paid him the
mules and wagon at an agreed price of $135.00 and the
further sum of $17.00, amounting in all to $152.00; leav-
ing a balance due him of $87.00 on the account. The
allegations of the answer were denied by a reply. On
the reference to the master to report the debts of the
estate, the commissioner filed a report allowing the claim
of C. C. Meade and Tobe Wiley for $1,200.00 and the
claim of Harry Preston for $87.00, and also the claim of
Martha Dean for $60.00. Exceptions were filed to the
report, proof was taken and on final hearing the court
entered judgment in favor of Martha Dean, Harry Pres-
ton and Meade and Wiley. The administrator appeals.

The claim of Martha Dean is for only $60.00. She
has no interest in any of the other claims contested. The
amount in controversy, so far as she is concerned, is less
than $200.00. It is well settled in this class of cases that
separate independent claims cannot be added together to
give this court jurisdiction, Caldwell v. Hampton, 57 S.
W. 174; Albany Mills v. Huff, 72 S. W. 820. The appeal
as to Martha Dean is therefore dismissed.

The claim of Meade and Wiley is based upon a note
for $1,200.00, secured by a mortgage on his tract of land
executed by William Dills. The proof shows that

Meade and Wiley owned an oil and gas lease on one hundred acres of land in Johnson county in the area where considerable excitement as to oil and gas existed. They proposed to sell to William Dills a one-twelfth interest in this lease for $1,000.00. He agreed to the proposition provided they would lend him $200.00, and would also protect him from a mortgage he had previously executed on the land to Vanhoose. This they agreed to; the $200.00 was paid, the interest in the lease was assigned to him and he executed the note for $1,200.00 and a second mortgage on the land securing it. Shortly after this he was killed. It is earnestly insisted that the real consideration for the transaction was the $200.00 they paid him; that the lease was of no real value and that the contract should only be enforced to the extent of $200.00. But the fact is, none of the parties knew whether oil or gas would be struck on the land. One knew as much about this as the other. If oil or gas was struck the lease was well worth what he paid for it. He said after he made the trade that it was a gamble he had taken; that he had to make some money and he had taken this chance. He was a man less than forty-five years of age, in good health, and while he dressed plainly was an average man in his circumstances. There was no fraud or imposition. Meade and Wiley sold to two other people a like interest in the lease for a thousand dollars and were holding the property at this price. The rule is well settled that parties who enter into a speculative contract cannot have relief because the speculation turns out to be unfortunate. In 2 Pomeroy's Equity, 4th ed., section 855, the rule is thus stated:

"When parties have entered into a contract or arrangement based upon uncertain or contingent events, purposely as a compromise of doubtful claims arising from them, and where parties have knowingly entered into a speculative contract or transaction—one in which they intentionally speculated as to the result—and there is in either case an absence of bad faith, violation of confidence, misrepresentation, concealment, and other inequitable conduct mentioned in a former paragraph, if the facts upon which such agreement or transaction was founded, or the event of the agreement itself, turn out very different from what was expected or anticipated, this error, miscalculation, or disappointment, al-

though relating to matters of fact, and not of law, is not such a mistake, within the meaning of the equitable doctrine, as entitles the disappointed party to any relief either by way of canceling the contract and rescinding the transaction, or of defense to a suit brought for its enforcement. In such classes of agreements and transactions, the parties are supposed to calculate the chances, and they certainly assume the risks, where there is no element of bad faith, breach of confidence, misrepresentation, culpable concealment, or other like conduct amounting to actual or constructive fraud.''

Again in section 926 the rule as to the inadequacy of the consideration is thus stated:

"The rule is well settled that where the parties were both in a situation to form an independent judgment concerning the transaction, and acted knowingly and intentionally, mere inadequacy in the price or in the subject matter, unaccompanied by other inequitable incidents, is never of itself a sufficient ground for canceling an executed or executory contract. If the parties, being in the situation and having the ability to do so, have exercised their own independent judgment as to the value of the subject matter, courts of equity should not and will not interfere with such valuation.''

The facts bring this case clearly within the rule thus laid down and the circuit court properly entered judgment in favor of Meade and Wiley and so much of the judgment is affirmed.

Harry Preston's claim rests upon his right to collect board from the estate of the deceased. Section 2178, Kentucky Statutes, is in these words:

"Any person other than the keeper of a tavern or house of private entertainment, who shall entertain in his house another, or furnish him with diet or storage for his goods, not making an agreement for compensation therefor, shall not recover anything against the person so entertained or furnished with diet or storage, or against his estate, but the person so furnishing another shall be considered as doing the same of courtesy.''

It has often been held under this statute that a contract is necessary and must be proved when denied in order to recover board, unless the entertainer is a tavern keeper or the keeper of a house of private entertainment. Rapp v. Caufield, 171 Ky. 122.

Dills being dead, Preston is not a competent witness to prove the contract, and there is no evidence that Preston is a tavern keeper or a keeper of a house of private entertainment or that there was any contract made by Dills to pay Preston for his board. The supporting affidavits filed with the claim only stated in substance that the affiants believed that Preston would not make a claim that was unjust. But the affidavits disclosed no facts establishing the justice of the claim. The depositions are equally insufficient. The facts show that Dills and Preston were brothers-in-law, Mrs. Preston being a sister of Dills; that they lived near each other on the same creek and on adjoining farms.; that Dills lived with his mother until her death in February before he was killed and that after his mother's death he took his meals at Preston's and also took his meals there for a while before his mother's death. Just how long does not appear. There is nothing in the record to show that Dills ever recognized that he owed Preston anything or made any trade with Preston in regard to the mules, except Preston's deposition, which is incompetent. There is in the record testimony by several witnesses who wished to hire the mules from Dills and were told by him to see Preston that he did not have control of them. But there is other testimony in the record showing that Dills regarded them as his mules; that they were fed with his corn, were pastured on his grass and that just before he was killed he proposed using the mules himself. From all the facts in the case the reasonable conclusion is that Dills allowed Preston the use of his mules as he was not raising a crop that season and that he was unwilling to hire the team to others when Preston was using them.

The evidence not showing a contract to pay board and not showing any contract in regard to the mules, the circuit court should have entered a judgment dismissing Preston's claim and adjudging the mules to the administrator.

Judgment is reversed as to Preston and the cause is remanded for a judgment as above indicated.